Krupp, Peter B., J.
Jose Lora (“Lora”) is charged in multiple indictments arising out of an alleged incident on May 12, 2012 during which a firearm was allegedly fired.[1] The case came before the court on defendant’s Motion to Exclude Non-Expert Opinion Testimony of Officer Duffy, which was filed with the court on April 22, 2013, the date scheduled for trial. Defendant’s motion sought to bar Worcester Police Officer Thomas Duffy (“Off. Duffy”) from giving an opinion that a person depicted in a surveillance video that recorded the alleged incident from a number of angles was the defendant. The Commonwealth stated its opposition to the motion in court on April 22, 2013. Both parties agreed that the court should view the surveillance videotape, which was provided to the court and marked as Exhibit A.
The case was not reached for trial on April 22,2013, but was continued for a few days until the court completed the case then on trial. On April 24, 2013, the Commonwealth filed a document entitled “Commonwealth’s Motion in Limine to Allow Voir Dire of Identification Witness.” This motion was, in essence, an opposition to the defense motion to exclude Off. Duffy’s identification testimony. It sought an eviden-tiary hearing on the issue. The court granted the motion for a voir dire, after having watched the surveillance video previously provided. The evidentiary hearing was held on April 24, 2013. The Commonwealth called one witness, Off. Duffy, to testify at the voir dire.
At the conclusion of the hearing, I found that the video was extremely blurry, that the video did not show any identifying facial features of the people depicted in the video, that the officer’s identification was dependent on his law enforcement contacts with the defendant, which would be difficult to sanitize, and was based on, among other things, the officer’s assumption of who the shooter must be based on the officer’s belief about the identity of one of the others depicted in the video. On balance the court deemed the identification more prejudicial than probative and allowed the defense motion in limine.
On April 25, 2013, the Commonwealth sought a stay of the trial so that it could pursue an interlocutory appeal. In accordance with Mass.R.Crim.P. 15(a)(2) and (e), the court granted the Commonwealth’s request for a stay.[2] The case is currently scheduled for a status conference on May 10, 2013.
To facilitate interlocutory review, the Commonwealth requested written findings related to the court’s allowance of the motion in limine. At the Commonwealth’s request, the court sets out its findings at further length.
The surveillance video captures a particular street scene at night. The videotape is date-stamped May 12, 2012, and has a digital time stamp that runs for several minutes around 1:30 a.m. The lighting is dark. There is only a little evident artificial light, and that only appears in one of the camera angles. Occasionally the scene is illuminated by head or tail lights of a passing vehicle.
The video shows a one-way street, with cars parked on both sides facing in the same direction. The video cameras record the street from at least four different angles. The cameras appear to be situated high up on one of the buildings on one side of the street. Visible below, and captured by the cameras, is the top of at least one tree. The cameras from some angles look down on and show the roofs and second-story level of buildings on the opposite side of the street.
At one point a group of people (at least seven) approach a car on the street. When another vehicle drives up, one person splits off from the group and appears to fire a weapon three times at the newly-arrived vehicle as it is backing up.
The videotape is extremely grainy and blurry. I find it of insufficient clarity to permit an identification; as some cases have characterized it, I find the surveillance videotape’s images of the individuals to be “hopelessly obscure.” Commonwealth v. Pleas, 49 Mass.App.Ct. 321, 325, 328 (2000), quoting United States v. Jackman, 48 F.3d 1, 5 (1st Cir. 1995). There are no facial features visible on any of the individuals who are captured in the video, even in those portions of the videotape when individuals are illuminated by headlights. There are no other identifying clothes, shoes or head-coverings visible in the videotape that would permit an identification.
Off. Duffy has worked the gang unit for more than five years and has interacted with Lora a number of times in his (Duffy’s) law enforcement capacity. He has spoken to Lora at least six times in the area of Ciystal Park, at least six times in the area of the Lakeside Housing project regarding his use of the basketball court there, and has seen Lora play in a basketball league. His personal, one-on-one interactions with Lora have been when he (Off. Duffy) arrested Lora. Off. Duffy’s other observations or contacts with Lora were with Lora in a group of others, and all in the context of Off. Duffy’s law enforcement work, either on patrol or as a liaison to youth in the community.
Off. Duffy could not see the eyes, nose or mouth of the person in the surveillance video that he identified as Lora. He could not see any identifying tattoos or marks. Off. Duffy could see the person’s hair, but could not identify him from his hair. Off. Duffy testified that he was able to identify Lora because it looked like *246 Lora’s face, it looked like people he (Lora) hung out with, and because of the way the person walked. Off. Duffy could not fairly have made an identification from the person’s face. I find that it would be enormously difficult, if not impossible, for Off. Duffy to identify any participants from the videotape, and that allowing an identification based on associational circumstances or the way a person walks is unreliable.
When asked to look at the videotape, Off. Duffy already had a belief about a particular group being involved in the incident. This belief played a role in his alleged identification.
Given the nature of the videotape and the facts surrounding Off. Duffy’s familiarity with Lora, I find that permitting Off. Duffy, a police officer, to provide an identification in this case carries significant risk of undue prejudice. Commonwealth v. Pleas, 49 Mass.App.Ct. at 327-29. This is not a case, as in Pleas, where the officer knew the defendant socially. Id. at 328. Here, Off. Duffy’s familiarity with Lora was entirely through his police work and was influenced by his assumption about a group that may have been involved in the incident. In such a circumstance, it would be impossible to sanitize Off. Duffy’s testimony completely (i.e. the plain inferences to be drawn would be that Lora had had frequent run-ins with the law or regularly hung out with people known to Off. Duffy), and the undue prejudice to the defendant would outweigh any probative value from the evidence.
I also credit the testimony of Off. Duffy that Lora has not changed his appearance between May 2012 and the present. Thus, there is less need for identification testimony from someone who knew Lora in May 2012. See Commonwealth v. Austin, 421 Mass. 357, 365-66 (1995). Cf. Commonwealthv. Vitello, 376Mass. 426, 459-60 & n.29 (1978).
Based on these findings, I have allowed defendant’s Motion to Exclude Non-Expert Opinion Testimony of Officer Duffy.

Lora is charged with assault with a dangerous weapon, to wit, a firearm (3 counts), malicious destruction of property over $250, possession of a loaded firearm, possession of a firearm after a prior qualifying conviction, and possession of ammunition after a prior qualifying conviction.

Because Lora has been unable to post the $2,000 set as bail in the case and has been in custody since mid-2012, he requested reconsideration of bail in light of the Commonwealth’s stated intention to take an interlocutory appeal. See Mass.R.Crim.P. 15(e) (“If an appeal or application therefor is taken by the Commonwealth, the defendant may be released on personal recognizance during the pendency of the appeal”). The court refused to revisit bail at that time, but indicated that it would consider the issue of bail if the Commonwealth were granted leave to appeal.